# WESTERN ELECTRIC MANUFACTURING COMPANY *v.* ANSONIA BRASS & COPPER COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued April 2, 1885.—Decided April 20, 1885.

The invention claimed in reissued patent No. 6,954 granted February 29, 1876, to Joseph Olmstead, assignor by mesne assignments to the appellants, was substantially anticipated by the invention described in letters patent in Great Britain granted to the Earl of Dundonald July 22, 1852 ; and also by letters patent granted there to Felix M. Baudouin, April 3, 1857.

A claim in a patent for a process does not cover a condition in the material used in the process which is not referred to and described in the specification and claim, within the requirements of Rev. Stat. § 4888.

Reissued patent No. 6,954 for a process in insulating telegraph wires being void, it follows that reissued patent No. 6955 for the product of the process is also void.

The case was a suit in equity, brought by the appellant, the Western Electric Manufacturing Company, against the Ansonia Brass and Copper Company to restrain the infringement of two reissued letters patent, numbered 6,954 and 6,955 respectively, granted to the appellant as the assignee of Joseph Olmstead, both dated February 29, 1876, for improvements in

insulating telegraph wires. The reissues are divisions of orig-inal letters patent No. 129,858, dated July 23, 1872. The descriptive specifications of the two patents were identical. They differed only in the claims, the first being for a process, and the second for the product of the process.

The specification of both patents, after stating that Olmstead had invented a new and useful improvement in insulating tele-graph wires, proceeded as follows:

"The method of insulating now in use consists in braiding over the wires a fibrous covering, after which it is dipped in wax, for the purpose of filling and closing its pores, and, after a subsequent scraping to remove the surplus wax, it is ready for use. This method is, however, objectionable, inasmuch as it leaves the covering in a very rough and soft condition, and fails to secure perfect insulation.

"In my improved method, after the wire has received its coating, I dip it in paraffine or wax, after which, instead of scraping off the surplus coating, I pass the whole through a suitable machine, which compresses the covering and forces the paraffine or wax into the pores and secures perfect insula-tion. By so compressing the covering the paraffine or wax is forced into the pores, and the surface becomes and appears polished.

"Wire insulated in this manner is entirely impervious to the atmosphere, of greater durability, and less cumbersome than any heretofore made."

The claim of the process patent, No. 6,954, was as follows: "The method of insulating telegraph wire by first filling the pores of the covering and subsequently compressing this cov-ering, and thereby polishing its surface, substantially as de-scribed."

The claim of the product patent, No. 6,955, was: "An insu-lated telegraph wire, the covering of which has its pores filled and its surface polished, substantially as described."

The defendant in its answer denied that Olmstead was the first and original inventor of the improvement described in the patents, or of any substantial or material part thereof, or that the same was patentable or the subject matter of invention, and

averred that the alleged invention had been previously patented by letters patent of Great Britain granted to Thomas Earl of Dundonald, dated July 22, 1852, and by letters-patent of Great Britain granted to Felix M. Baudouin, dated April 3, 1857. The defendant also denied infringement.

The Circuit Court, on final hearing, dismissed the bill, and the plaintiff appealed.

*Mr. George P. Barton* for appellant.

*Mr. William B. Wooster* for appellees.

MR. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

It is clear that the two patents must stand or fall together. If the patent for the process is invalid so must be the patent for the product. What we have to say will refer to the process patent.

The alleged invention described in the patent is not for insulating telegraph wires, for that art long antedated the original patent. The specification disclaims as a part of the invention the braiding of a fibrous covering over the wire, and then dipping it in wax for the purpose of filling and closing the pores, and the subsequent scraping of the surplus wax from the wire. The patent does not cover the material in which the wire, after it has received its fibrous coating, is dipped, which may be either paraffine, wax, or bitumen, or any other suitable material. The three substances mentioned had long been used for that purpose. Nor does the patent specify or cover any device by which the process is to be carried on. Any suitable machine may be used.

The process described by the patent consists, therefore, simply in this : After the wire has received its fibrous coating, and been dipped in paraffine, wax, or other suitable substance, the compressing and forcing of the paraffine, wax, or other substance, without scraping off any part of it, into the pores of the fibrous material by some suitable means. We think this process was not new.

It was substantially anticipated both by the process de-

scribed in the patent of Dundonald and in that of Baudouin, the first dated January 22, 1852, and the other April 3, 1857. Dundonald describes his process thus:

"I also employ a bituminous material to cover, and thus insulate, the conducting wires of electric telegraphs, which are intended to be placed under ground. For this purpose I employ the said bitumen, either simple or compounded, of a flexible description, and pass the wire through it when it is in a melted state, then causing the wire to pass through some die or orifice, which will deprive it of all the superfluous bitumen.

. . . The incasement of this wire with bitumen may also be effected by covering it with a filamentous material, which has been previously saturated with melted bitumen, and then passing the wire so covered through a heated die or orifice, so as to melt or soften the bitumen upon the filamentous material, and press the whole of the coating against the wire in such a way as to cause it to form one compact continuous covering of the wire, and thus insure its insulation."

The patent of Baudouin describes his process as follows:

"My invention relates to the preparation of conductors of electricity for electric telegraphs, being wires insulated to prevent the loss or deterioration of the electric currents used for that purpose, and also in the machinery for the preparation or manufacture of such conductors. I coat the wires with bituminous or such like fatty matters that are not liable to become hard or crack, but, on the contrary, are constantly acted on by the temperature of the atmosphere. Coatings of this material in themselves are insufficient to maintain the proper protection and insulation for telegraph conductors, but when combined with other materials, such as paper, woven fabrics of cotton, silk, wool, or hemp, in a particular manner, are well adapted for the purpose.

"I prefer to use three ribbons and bobbins for this purpose, the first covering of the wire being enveloped by the second in such manner that the helical junction of the first ribbon is covered by the second, and the second by the third. The wire is passed through a bath of hot bitumen, and has the superfluous matter removed by passing through suitable dies or parts

to scrape and smooth its surface, and render it of uniform thickness. The first and second ribbons are also passed through bituminous or other suitable matter to render them more impervious to electricity. The coated and lapped wire is passed through suitable dies to remove superfluous matter, to smooth down the lapping of the ribbons, and to compress and cause their proper adhesion.

" The coated and lapped wire passes through dies or smoothing-holes both in entering and leaving the rotating frame; these dies or smoothers have a rotary motion, the better to enable them to wipe and smooth the coated wire."

It is plain that these patents anticipate the process set out in the specification of the Olmstead process patent. They all three describe the compressing of the wax, paraffine, or bitumen coating of a wire covered with the fibrous material, so as to attain the same result, namely, the insulation of the wire.

The Olmstead patent, therefore, covers an old process applied to the same subject, with no change in the manner of applying it, and with no result substantially distinct in its nature. It cannot, therefore, be a valid patent. *Pennsylvania Railroad Co.* v. *Locomotive Truck Co.*, 110 U. S. 490; *Vinton* v. *Hamilton*, 104 U. S. 485.

The fact that in the process described in the Olmstead patent the surplus wax or paraffine is not scraped off, but all that adheres to the wire is compressed against it and forms part of the covering, is relied on to distinguish that process from those of Dundonald and Baudouin. But the Dundonald process does not differ in this respect from that of Olmstead, for in the Dundonald process the whole of the coating is pressed against the wire, and is left to form the covering; and as to the Baudouin process, the difference consists merely in the use of a greater quantity of wax or paraffine to form the coating. This may be an improvement upon the Baudouin process, but it does not involve invention.

So far as the present case is concerned, another answer to this contention of the appellant is, that, in this respect, the defendant follows the Baudouin, and not the Olmstead process, by scraping off the superfluous coating material.

It was insisted in argument, by appellant's counsel, that one of the features of the process described in the Olmstead patent was the allowing of the wax or paraffine covering to cool before compressing it upon the wire, and as this was not done in the Dundonald or Baudouin process, they did not anticipate the Olmstead process. But neither the specification nor claim of the Olmstead patent mentions, as a part of the process, the cooling of the wax or paraffine coating before compressing it upon the wire. The appellant's counsel, however, contends that it must be considered a part of the process, because the polished appearance of the surface of the covering described in the specification is the result of allowing the paraffine or wax to cool before compressing it upon the wire. But, clearly, a patentee cannot claim the benefit of an element of his invention thus vaguely and indefinitely hinted at. The law in force when the patent of Olmstead was issued, Act of July 8, 1870, § 26, 16 Stat. 201, Rev. Stat. § 4888, requires that "before any inventor or discoverer shall receive a patent for his invention or discovery he shall  . . .  file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms, as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same;  . . .  and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." It is clear that if the patentee intended to include the cooling of the wax or paraffine before compressing it upon the wire, he has failed to describe in his specification that element of his invention, as required by the statute. Instead of describing the process he mentions a quality of the product and asks the court to infer the process from that quality. Such a vague and inverted method of description is not a compliance with the statute. That part of the alleged invention is not even referred to in the most distant manner in the claim. It has been held by this court that " the scope of letters patent should be limited to the invention covered by the claim; and, though the claim may be illustrated,

it cannot be enlarged by the language in other parts of the specification." *Railroad Co.* v. *Mellon,* 104 U. S. 112. The element of the process under consideration cannot, therefore, be held to be covered by the patent. The contention that the patentee intended to include it in his process is evidently an afterthought.

The result of the views expressed is that both the patents sued on are void.

*Decree affirmed.*