STUTZ v. ROBSON et al.

(Circuit Court, W. D. Pennsylvania. February 13, 1893.)

No. 4.

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIMS—INFRINGEMENT—COAL-WASHING MACHINES.

If claim 3 of reissue patent No. 9,011, granted to Sebastian Stutz, for improvements in coal-washing machines, namely, "the chambers, A, A, having sieves, s, s, inclined ways, C, C, leading into the central chamber, L, and the valve passages, e, e, as set forth," can be sustained at all, it must be narrowly construed, and therefore a coal-receiving chamber located in front of the washer boxes and six feet distant therefrom is not the "central chamber" of the claim.

2. SAME—ANTICIPATION.

The defense of anticipation to claims 2 and 3 of patent No. 194,059, for improvements in coal washers, granted to same patentee, sustained.

3. SAME.

There is no invention in changing the location of a sulphur outlet or the location of a drying screen in a coal-washing machine, where there is no change of function or increased efficiency.

In Equity. Suit by Sebastian Stutz against Robson & Son and others for infringement of a patent. Bill dismissed.

William L. Pierce, for plaintiff.
W. Bakewell & Sons, for defendant.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. This suit is upon two letters patent for improvements in coal-washing machines granted to the plaintiff, Sebastian Stutz, viz. reissue No. 9,011, dated December 30, 1879, and No. 194,059, dated August 14, 1877. The defendants are charged with the infringement of the third claim of reissue No. 9,011, which is as follows: "3. The chambers, A, A, having sieves, s, s, inclined ways, C, C, leading into the central chamber, L, and the valve passages, e, e, as set forth." The coal-washing apparatus shown comprises three contiguous compartments or chambers, of which the two outer ones, A, A, are separators or washer boxes, each provided with a sieve, s, and a slate outlet, e, controlled by a valve; while directly between the two washer boxes, and in actual contact therewith, is located the third compartment, L, into which the washed coal and water are delivered from each washer box by an inclined plane or way, C. The central chamber, L, is divided into two parts, L and L', and the water flows through an opening in the dividing partition into the part, L', and thence into the washer boxes, thus traveling in a circuit, and is used over and over again.

Now, the proofs show that, before the plaintiff made his inventions, coal-washing machines of the same general type as his were in use at the coke works of Carnegie Bros. at Larimer, Pa., at the works of Jones & Laughlins, in Pittsburgh, and at the works of the Mansfield Coal & Lime Company, at North Mansfield, Pa.; and these prior machines, respectively, had in combination all the elements mentioned in claim No. 3 of the reissue, namely, the

washer boxes with sieves, slate-discharge passages operated by valves, inclined ways for the coal and water, and a settling tank or receiving chamber; the only difference being that, whereas in the plaintiff's machine the chamber, L, is between and immediately adjacent to the two washer boxes, in the prior machines the settling tank or receiving chamber was in front of the washer boxes,—in the Larimer machine immediately in front and close thereto, so that the coal and water passing over an incline were delivered directly into the chamber; while in the other two cases the receiving chamber was somewhat further removed, the washed coal being discharged therein over a screen, so as to drain the coal as much as possible. It is clear that the only feature of novelty in claim No. 3 of the reissue is the location of the receiving chamber between the washer boxes. If, then, the claim under consideration can be sustained at all, it must be interpreted very narrowly. In view of the designation "central chamber, L," it is difficult to see how the claim can be construed otherwise than as limited to a receiving chamber located between the separators or washer boxes; but, assuredly, the central chamber of the claim cannot be a tank or chamber located in front of the washer boxes and away therefrom. Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274; White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. Rep. 72. Indeed, an interpretation which would include a receiving chamber not directly connected with the washer boxes, but separated and distant therefrom, is excluded by the prior state of the art. Roller-Mill Co. v. Walker, 138 U. S. 124, 133, 11 Sup. Ct. Rep. 292. Now, the receiving chamber of the defendants' machine is not located between the washer boxes, but is situated in front of them, and not less than six feet distant. It is not, therefore, a "central chamber," within the true meaning of the claim. Moreover, it is noteworthy (Rowell v. Lindsay, 113 U. S. 103, 5 Sup. Ct. Rep. 507) that the defendants' apparatus does not possess the distinguishing function of the plaintiff's combination whereby the water is saved and used over and over again. Waiving the question of patentability, our conclusion is that there is no infringement of this claim by the defendants.

The defendants are charged with the infringement of claims 2 and 3 of the other patent, No. 194,059, namely:

"(2) The boxes, A, B, provided with the curved partition, M, and the outlet, o, substantially as described, for the purpose specified. (3) The combination of the stationary sieve, S, and water chamber, A, with the dam, n, passage, F, and dry screen, f, and with the passages, h, g², and, g, g', substantially as described."

The box, A, of the second claim is the "separator box," and it is provided with a sieve, S, upon which is placed the layer of crushed coal which is to be washed. In the box, B, a box-shaped piston works, and thereby a current of water is forced up against the coal. The curved partition, M, is at the bottom of the separator box, A, and upon it fall the sulphur and other fine matter dropping through the sieve as the coal is moved and lifted by the action of the water. The function of the curved partition is stated to be "greater convenience of cleaning out that part of the box

from fine sulphur and slate, the mud sliding down more easily to the opening, o, where its outlet is effected automatically;" that is, upon moving a valve or lifting a gate which closes the hole, o.

Anticipation of this claim is clearly shown. The coal-washing machine of Jones & Laughlins and at Mansfield, respectively, had a plunger box and a washer box equipped with a sieve, and having a curved bottom, shaped like a half circle, in the lowest part of which was a sulphur outlet, operated by a valve for the periodical discharge of the sulphur and other fine particles. True, in the plaintiff's machine the curvature is only in the front part, and the opening for the discharge of sulphur is at the opposite side of the machine, the sulphur passing out through the space under the plunger. These differences, however, do not amount to invention. The function of the sulphur outlet is the same whether located at the one place or the other. The plaintiff, indeed, testifies that his machine possesses a special advantage, in that his curved partition, M, leads into a chamber beneath the plunger, which acts as a receptacle for the sulphur, which thus is prevented from mixing with the clean water, during the agitation of the latter; but there is no hint in the specification of any such advantage or function, and the plaintiff cannot read into his claim a sulphur deposit chamber. Western Electric Manuf'g Co. v. Ansonia Brass, etc., Co., 114 U. S. 452, 5 Sup. Ct. Rep. 941; Howe Mach. Co. v. National Needle Co., 134 U. S. 394, 395, 10 Sup. Ct. Rep. 570. Besides, according to the weight of evidence, the asserted advantage has no real existence. Moreover, the coal-washing machine at Larimer had an inclined bottom, down which the sulphur slid to the sulphur outlet at the extreme bottom part of the box. This construction is also shown in the prior patent granted to George Lauder on May 30, 1871. It is to be added that, in point of fact, the defendants do not use a curved bottom, but an inclined one. The defendants' structure, too, otherwise differs from the plaintiff's specific form. But this line of discussion we will not further pursue, for it is enough to say that, in our judgment, this claim is altogether destitute of patentable novelty.

The third claim of patent No. 194,059 was before this court in the case of Stutz v. Armstrong, 20 Fed. Rep. 843, and was sustained, with certain other claims; but the contest there was mainly over the other claims, as the latter embodied the really meritorious and novel features of the plaintiff's apparatus. Touching this particular claim the proofs were scanty and incomplete; but here they are full, and such as to compel us to hold that the defense of anticipation is made out. It is now conclusively shown that the prior machines of Jones & Laughlins and at Mansfield contained all the elements of this third claim, performing severally the same identical functions, and combined in substantially the same way, for the same purpose, and with the same result. The single difference is in the location of the "dry screen, f," in the chute connecting the washer boxes and the "elevator boot" into which the washed coal is delivered. The function of the screen, as is stated in the specification, is "to separate the water from the delivered material before the latter has reached the elevator

buckets." In the plaintiff's patent this drying screen is placed immediately in front of the washers, whereas in the prior machines referred to it was placed further in advance,—nearer to the elevator. But, whether in the one place or the other, the screen performs the same function with equal efficiency. Certainly the change made by the plaintiff in the position of the screen, even if it secured a better result, was a matter simply of good judgment, not involving invention; but, in fact, the change was of no advantage.

Let a decree be drawn dismissing the bill, with costs.

BUFFINGTON, District Judge, concurs.