### HARTFORD FIRE INS. CO v. SMALL.

(Circuit Court of Appeals, Fifth Circuit. January 15, 1895.)

No. 324.

1. INSURANCE—WAIVER OF CONDITION AGAINST ADDITIONAL INSURANCE.

Waiver of an express condition against taking additional insurance can only be inferred when the evidence shows that the subject-matter of the waiver and consent was in the minds of the parties, coming together on that definite proposition.

2. SAME—PROVISIONS AGAINST POWER OF AGENTS TO WAIVE CONDITIONS.

Declarations in policies against the power of officers or agents to waive conditions except by writing indorsed thereon must be enforced by the courts as part of the contract, unless there is some valid reason for not doing so.

In Error to the Circuit Court of the United States for the Southern District of Georgia.

This was an action at law by A. B. Small against the Hartford Fire Insurance Company upon a policy of fire insurance. In the circuit court there was a verdict for plaintiff, and the court rendered judgment thereon. Defendant thereupon sued out this writ of error.

King & Spalding and Marion Erwin (Alex C. King, of counsel), for plaintiff in error.

Steed & Wimberly (Clem P. Steed, of counsel), for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

BRUCE, District Judge. A. B. Small sued the Hartford Fire Insurance Company for $2,400 and interest, claimed as a loss by fire which occurred February 26, 1893, which loss was covered by a policy of insurance issued by the defendant company on the 12th day of March, 1892, to McBride & Nichols, who transferred the policy after loss to plaintiff, A. B. Small. He also sued for $600 damages and $300 attorney's fees, upon the ground that the defendant company had refused to pay the loss for more than 60 days after it became due and had been demanded, and that said refusal was in bad faith and groundless. The policy was upon a stock of goods, furniture, and fixtures at Unadilla, Ga., and the suit was commenced in the city court of Macon, Bibb county, Ga., and was removed by the defendant company into the United States circuit court for the Southern district of Georgia, Western division, on the ground of diverse citizenship. The policy, as originally written, contained the words: "$5,000 other concurrent insurance permitted on stock." To this declaration the defendant pleaded the general issue, and, in addition thereto, that the policy sued on was void because of a breach of the covenant therein, which provided:

"This entire policy, unless otherwise provided by agreement indorsed herein or added hereto, shall be void if the insured now has or shall hereafter make or produce any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

Plaintiff amended his declaration on the trial by alleging that said policy, after the words, "$5,000 other concurrent insurance permitted on stock," contained the additional figures or numbers "$2,500" under "$5,000," and the signature, "J. A. Wilson, Agent. 5–16–92." To this the defendant filed a further plea:

"That the words and figures alleged by said amendment to be in said policy, and the signature, 'J. A. Wilson, Agent,' were not the act, deed, or contract of the defendant, and were not made by it or by any one authorized by it."

It appeared by the evidence in the trial that, at the time of the loss, the insured had, in addition to the policy sued on, policies of insurance in different companies covering the same stock of goods to the amount of $10,000. "$5,000 other concurrent insurance permitted on stock" was written on the policy when it was executed, March 12, 1892. Afterwards, "J. A. Wilson," after the words, "$5,-

000 other insurance permitted on stock," wrote the additional words "$2,500," with his signature, "5–16–92." Wilson was a mere soliciting agent, did not write policies, and it cannot be maintained that he had authority to bind the insurance company in what he did, and, if he had, the consent was only to $2,500 more insurance; so that there was $2,500 additional insurance unconsented to, even if Wilson's power to bind the company be conceded.

But it is claimed that this condition of the policy as to additional insurance was waived, or that the additional concurrent insurance was consented to by the action and conduct of J. F. Cobb, who was an insurance agent at Cordele, in Dooly county, Ga. He represented some 15 or 16 companies, as he testifies, among which was the Hartford; but he did not write the policy of the Hartford on the McBride & Nichols stock. That was solicited by Wilson, and written by Thomas Eggleston, agent, whose office was in Atlanta, Ga. Now, what does the evidence show in reference to the waiver of the condition of the policy as to additional insurance, or the consent to it, on the part of Cobb, and what consent did he give that can be held to bind the company? A question is suggested about his power, and about whether the risk in question was within his territory, but, without regard to that, does the evidence in the record show that Mr. Cobb in anything he did or said waived, on behalf of the company, the condition of the policy sued on, or gave any consent to additional concurrent insurance upon that policy? He says in his testimony in reply to—

"Q. Did you have anything to do with the issuing of the Hartford insurance policy on McBride & Nichols' stock? A. Nothing whatever. Q. Was it referred to you by the company in any way, shape, or form? A. No, sir; it was not. Q. Were you requested by McBride & Nichols at any time, in your capacity as agent for the Hartford Insurance Company, to allow other insurance? A. No, sir; that company was never mentioned, only in this letter where they gave me the amount of all the insurance."

And, again: "Q. Did you, as agent for the Hartford Company, undertake in any way, shape, or form to allow them that privilege? A. No, sir; I did not specify that company. As I stated in my letter, I told them it would not be out of place to keep that entire amount of insurance provided they got the goods they claimed."

Mr. McBride, one of the insured, in answer to question, says:

"Q. Look at this application, and see if you can refresh your memory from that, and tell what companies they were? A. No, sir. Those are the companies we had insurance in, but to tell you which policies expired, I do not remember. Q. Were those policies which expired November 25, 1892, policies in the Hartford Fire Insurance Company? A. No, sir. Q. They were not? A. No, sir. Q. What agent represented, in your dealings, the policies which expired on November 25th? A. Mr. Cobb. Q. Then Mr. Cobb was the agent of the companies so far as the policy which expired on November 25, 1892, was concerned, but that was not the Hartford policy? A. No, sir. Q. What policy did Mr. Bozeman issue? A. In the London, Liverpool, and Globe. Q. This correspondence about the canceling of policies which you say took place was in reference to the cancellation of policies which were issued as a continuation of the policies which expired November 25, 1892? A. Yes, sir. Q. And that correspondence was with Mr. Cobb, who was the agent for the companies whose policies had expired November 25, 1892? A. Yes, sir."

Again: "Q. In taking this additional insurance, what purpose, if any, had you? Did you explain that to the jury at the time you took the last $2,500?

A. We had increased our stock of goods. and, of course, we wanted to increase our insurance also. Q. What was the purpose in corresponding with James F. Cobb in reference to it? A. We had more insurance than we thought was necessary to carry. We did not want to pay the premiums on it."

On a question of a waiver of an express condition of a written contract or a consent that such condition need not be complied with after a breach of the condition has been made by the insured, there must be evidence that the subject-matter of the waiver and consent was in the minds of the parties at the time, and that it was consciously and purposely done by the minds of the parties coming together upon the definite proposition. If there was a waiver by agent Cobb, for how much additional insurance was such waiver? Or was it a waiver of the entire condition as to additional concurrent insurance? The evidence not only fails to show the agreement of the parties as to the matter in question, but it shows the contrary. It shows that the matter in the mind of McBride was the burden of so much insurance from the payment of which he wanted to be relieved, and the matter in the mind of Mr. Cobb was, as he states it, to keep the policy in the Aetna, and the distinct matter of a waiver of the condition in the policy of the Hartford (the one in suit) or the consent to additional concurrent insurance as to the Hartford policy is not shown to have been in the contemplation or purpose of either of the parties at the time of the matters detailed in the evidence. The letters of Johnson and the assured to Cobb, admitted in evidence over the objection of counsel for the defendant company, were not competent; and, if they might be considered in connection with Cobb's testimony, the evidence, in any view, falls short of that measure of proof which can be held to justify the verdict and judgment in this case. This is made more clear by reference to the last clause of the policy:

"This policy is made and accepted subject to the foregoing stipulations and conditions. together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have the power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions. no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions. unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

These stringent clauses in contracts of this kind are often made the subject of adverse comment, and, with whatever of justice this is often done. it must be borne in mind that courts do not make contracts for parties, and must enforce them, unless there is some valid reason for not doing so. On this subject the supreme court of the United States, in the case of Insurance Co. v. Unsell, 144 U. S. 450, 12 Sup. Ct. 671, quoting from the case of Thompson v. Insurance Co., 104 U. S. 252, says:

"Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party on which to base a reasonable excuse for the default."

It is perhaps proper to say in this connection that the question of consent to additional concurrent insurance is not a mere technical one, but is based upon sound principles in the law of insurance. It is to discourage overinsurance where it would be to the interest of the assured to incur a loss, and so put a premium on fraud. We think the charges asked and refused for the defendant should have been given, and judgment of the court is reversed, and the cause remanded.