**KESZTHELYI v. DOHENY STONE DRILL CO.**

District Court, S. D. California, Central Division.

Feb. 23, 1931.

Charles C. Montgomery, of Los Angeles, Cal., for plaintiff.

Wellborn, Wellborn & Wellborn and Wm. L. Connor, all of Los Angeles, Cal., for defendant.

COSGRAVE, District Judge.

On November 20, 1923, letters patent No. 1,474,905 were issued to plaintiff for a new and useful improvement in tool joints used in rotary drilling of oil wells.

Plaintiff explains in his specifications that in rotary drilling the bit cutting the formation is carried at the lower end of the string of drill pipe. To withdraw the bit it is necessary to pull the drill pipe, uncoupling it at intervals, ordinarily of four lengths of the pipe. As the pipe is drawn from the well it is therefore uncoupled at every fourth joint, and it is therefore necessary to provide a tool joint at such intervals to prevent the injuring of the threads of the pipe by frequent coupling and uncoupling.

That in rotary drilling it is necessary to circulate a stream of mud-laden fluid down through the string of drill pipe and through the bit. To do this it is necessary to apply considerable pressure to the upper end of the drill pipe, and it is difficult, using the present type of tool joint, to insure tight joints at the ends of the stands of drill pipe.

That tool joints, as ordinarily constructed, consist of a pair of steel collars, one of which is screwed upon each of the contacting ends of the drill pipe, using the threads with which the pipe is ordinarily provided. One of the collars has a pipe with a steep taper and coarse threads, and the other collar having a box into which this pipe or pin is threaded. It is the common practice to set up these tool joints by the use of the power driven rotary table so that the friction on the threads between the box and the pin is very great, and it is not an uncommon thing for the joints to become loose or even unscrewed.

He further states that "it is an object of my invention to provide a novel form of tool joint in which the friction on the threads is not entirely depended upon to hold the joint together but supplemental frictional means are provided for this purpose." Then, after referring to the mud circulating feature above mentioned, he says: "It is a further object of my invention to provide auxiliary means of insuring a tight joint at all times." Further objects and advantages will be made evident hereinafter.

By reference to the drawings he shows the upper or primary collar screwed to the end of the section of drill pipe. Formed in the primary collar is an outer lip, the outside lower edge or shoulder of which is flat, at a right angle to the axis of the pipe. The inside of the lip is conical, the conical surface terminating in a groove at the inside base of which begins a projection extending downward and externally threaded with a coarse tapered thread, and this projection terminates in a flat nose or radial surface, fitting into a groove in the secondary collar. The lower or secondary collar is screwed to the upper end of the lower section of drill pipe. It has an outside shoulder with radial surface facing that on the lip of the primary collar. Then a projection on the secondary collar commences with an external conical surface of proper taper and size to fit into the inside conical face of the lip on the primary collar as the joint is screwed home. This projection on the lower or secondary collar terminates in a flat nose, at a right angle to the axis of the pipe, and facing the groove described in the primary collar, the surface of the nose being wider than the bottom of the groove. The inside of the projection on the secondary collar is threaded to receive the threaded projection on the primary collar, and at the inside base of the projection on the secondary collar is a groove

into which the radial surface or nose of the projection on the primary collar faces.

Between all radial faces, that is, faces at a right angle to the axis of the pipe, a small space is shown. The patent specifies that "the parts are so proportioned that when the collars are screwed home there is still a little space therebetween on all surfaces which are at right angles to the axis of the pipe."

The plaintiff in his specifications continues:

"In this preferred form of my invention it is possible to obtain a very tight joint between the collars * * * due to the tapered lip (of the primary collar) which co-operates with its complementary part on the (secondary) collar. This tapered surface not only acts to produce a tight joint independent of the threads between the parts, but it also tends to increase the friction between the two collars * * * thus preventing the joints from becoming unscrewed. The central projection (not heretofore mentioned because deemed unimportant by all parties) also serves to insure a tight joint between the parts although this may in some cases be omitted and entire reliance placed on the conical surface."

He then desires that his invention "shall be defined solely by the annexed claims." His claims are:

"1. A tool joint comprising: a primary collar adapted to be secured to a joint of pipe and having an opening therethrough, said opening being in open communication with the interior of said pipe; a secondary collar adapted to be secured to a joint of pipe and having an opening therethrough, said opening being in open communication with the interior of said pipe; a lip formed on the outer edge of said primary collar and enclosing a groove; a projecting portion of said secondary collar fitting inside said groove and inside said lip; and threaded means for forcing said collar towards each other in an axial direction.

"2. A tool joint as in claim 1 in which the interior surface of said lip is conical and the projecting portion of said secondary collar fitting inside said conical surface is also coned to fit in fluid tight relationship therein."

"5. A tool joint comprising: a primary collar adapted to be secured to a joint of pipe and having an opening therethrough in open communication with the interior of said pipe a secondary collar adapted to be secured to a joint of pipe and having an opening there-through in open communication with the interior of said pipe and with the opening in said primary collar; a lip formed on the outer edge of said primary collar and enclosing a groove; a projecting portion of said secondary collar fitting inside said groove and inside said lip; a conical projection having an external thread and formed centrally on said primary collar; and an internally threaded portion on said secondary collar into which said projection fits and is threaded."

The other claims are omitted, as it is conceded that only 2 and 5 are important.

It appears therefore that plaintiff claims as his invention the tool joint consisting of the two collars described with threaded means of closing the joint where the lip of the primary collar is beveled or coned to receive the projecting portion of the secondary collar, which is also coned to fit in fluid tight relationship.

In other words, the outside lip with the interior beveled or coned surface receiving a similarly beveled projection on the complementary part and forced into fluid tight relationship by the threads.

The patent seeming to depend on the conical or beveled contacting surfaces is clearly anticipated by the Runyan patent, No. 1,394,791, issued in 1921, where the beveled surfaces are described as relieving the threads of strain and consequent wear, and distinctly claimed. Substantially the same principle is shown by the patent to Lecky, No. 47,554, issued in 1865. This was before the day of rotary drilling.

It was shown, moreover, by the defendant that the advantage of the beveled surface was known and used for many years prior to the issuance of plaintiff's patent, and I think therefore that the defense of anticipation has been established so far as this particular feature is concerned.

The controversy at the trial, however, revolved largely around that feature shown in the plaintiff's specifications and drawings and referred to as the "little space." As shown hereinbefore, space was left between all opposing surfaces at right angles to the axis of the pipe. It is urged by the plaintiff, and apparently supported by evidence, that these spaces are of great utility in that as the threads and opposing surfaces of the joint become worn a further tightening may be had before the opposing radial surfaces come in actual contact; that the little spaces furnish a reserve which are taken up before the radial surfaces are in contact and consequently fur-

ther tightening of the joint is made possible; that if this were not the case, that is, if the parts fitted exactly and no space existed, then as the parts became worn further tightening is impossible because of interference by compression at the bottom of the nose and the joint inevitably becomes loose; that the joint may consequently be tightened beyond the point where the parts first engage due to this reserved space.

It further appears from the evidence that the defendants in the making of their tool joint, which it is claimed infringes that of plaintiff, at first allowed no such space; that they did not construct it until after knowledge of the plaintiff's patent. Defendant's drawings distinctly show a flat nose on the secondary collar wider than the groove in the primary collar. The defendant's tool joint placed in evidence distinctly shows the space in one of the joints exhibited. A rather impressive illustration is afforded by comparison of two of defendant's joints. One, as suggested, shows the unoccupied space; the other, which had been subjected to a considerably greater pressure, does not reveal it, the space having entirely disappeared.

The defendant denies that the nose of the pipe is flattened purposely. He asserts that where such exists it is purely accidental. He gives no explanation of this feature in his drawings, which admittedly were made to be followed in the manufacturing. He denies that the space is of any utility.

It was testified on behalf of the plaintiff that an important feature of the patent was the ability to obtain a full wedging effect through the conical contacting surfaces without interference by compression at the nose of the wedge. This because of the space at the bottom of the nose which insured full contact between the inclined surfaces.

As shown, however, the claims of the patent are entirely devoid of any reference to the little spaces and nowhere in the patent is their utility or purpose described. It is to be noted in this connection that the Runyan patent, above referred to, shows a space between the contacting annular surfaces and while no reference is made to this particular feature it is explained that the two sections of the coupling may be forced farther and farther into engagement with each other to take up wear.

The law concerning claims of a patent is clear.

"He shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." Rev. St. § 4888 (35 USCA § 33).

The scope of letters patent should be limited to the invention covered by the claim; and although the claim may be illustrated and interpreted by reference to the specifications and drawings it cannot be thereby enlarged. Westen Electric Mfg. Co. v. Ansonia Brass & Copper Co., 114 U. S. 447, 5 S. Ct. 941, 29 L. Ed. 210; Lehigh Valley Ry. Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639.

As suggested, the proof of the prior art shows the beveled surfaces, but it also shows a pointed nose upon the beveled surface that extends into the groove and distinctly lacks the flattened nose which features plaintiff's invention and which accounts for the so-called little space. I do not deem it necessary to pass upon the question whether the presence of the space at the end of the nose is of such character as to sustain the issuance of the patent, for the reason that it is not made the subject of a claim and under such circumstances must be held to have been dedicated by the plaintiff to the art.

I therefore conclude that the plaintiff Keszthelyi does not introduce a new invention in the art of rotary drilling in so far as the conical surfaces of his joint are concerned because that is shown in the prior art; that a new element is shown in so far as the spaces are concerned if such a thing is patentable; that the preponderance of the evidence shows that the defendant has copied this feature and utilized it; that the plaintiff has not claimed the useful and new feature of his invention and it is therefore dedicated to the art.

Judgment is ordered in favor of the defendant, who will prepare findings in accordance with this opinion.