### DE CEW v. UNION BAG & PAPER CORPORATION.

#### Civil Action No. 106.

District Court, D. New Jersey.

March 9, 1945.

---

324

Bartlett, Eyre, Keel & Weymouth, of New York City (Charles H. Keel, of New York City, of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (Burgess, Ryan & Hicks, of New York City, and Newton A. Burgess, all of New York City, of counsel), for defendant.

SMITH, District Judge.

This is a suit under the patent laws for the infringement of Patent No. 1,580,814, hereinafter referred to as '814, of which the plaintiff is admittedly the owner. This patent issued on April 13, 1926, on an application filed on June 7, 1924. The defendant denies infringement and challenges the validity of the patent.

The patent covers "Improvements in Methods of Hydrating Cellulose Fibers" of which papers are made. Claims 1, 2 and 3 thereof cover a "method of hydrating cellulose fibers," and claim 4 thereof covers a "pliable paper product made from cellulose fibers." We deem it advisable to consider the process claims and the product claim separately.

### State of the Art

The history of the art and its development were adequately summarized in the opinions filed in the related suit,[1] and it seems unnecessary to review that summary here. We briefly outline only that branch of the art to which the patent in suit relates. This outline follows substantially the language of our earlier opinions.

The many kinds of kraft paper, such as those manufactured by the defendant, are made of cellulose fibers extracted from wood. The wood, cleaned and suitably prepared, is digested in a solution of caustic alkali and reduced to pulp; its ligneous constituents are removed by this chemical treatment, leaving a slightly cohering mass of insoluable cellulose fibers. The cellulose fibers, thus extracted and prepared, are converted into paper in three successive operations, identified in the industry as "beating," "refining," and "felting."

The pulp, brought to a predetermined fluidity and consistency by the introduction of water, is milled in a beater; the fibers are thus isolated, shortened, and *hydrated,* and the pulp becomes gelatinous. The pulp, after having been thus treated and prepared, is then refined in a jordan; the fibers are thus refined, "fibrillated," and further *hydrated.* These successive operations, which are substantially similar, impart to the cellulose fibers the physical properties essential to the formation of the paper.

The hydration of the cellulose fibers is effected by the "beating action" of these operations. It should be noted, however, that in many paper mills the hydration is effected by only one of these operations, either "beating" or "jordaning"; the similarity of their functions renders un-

---

[1] De Cew v. Union Bag & Paper Corp., D.C., 57 F.Supp. 388, and D.C., 58 F.Supp. 301.

necessary the utilization of both operations. The "beating action" and the consequent hydration of the cellulose fibers are indispensable in the manufacture of kraft papers because they impart to the cellulose fibers certain physical properties which enhance the quality and strength of the finished paper.

## Process Claims

The invention of claim 1 is therein defined as follows: "A method of hydrating cellulose fibers, which consists in beating them in both beater and Jordan *while in an alkaline condition.*" The invention of claim 2 is similar to that of claim 1, and is therein defined as follows: "A method of hydrating cellulose fibers, which consists in passing them through a Jordan engine *while in an alkaline condition.*" (Emphasis by the Court) The only difference is obvious.

The invention of claim 3 is therein defined as follows: "A method of treating cellulose fibers for paper making, which consists in hydrating the fibers by beating and jordaning them *in the presence of a soluble alkali until the fibers are made pliable by the penetration of the alkali,* and then *neutralizing the alkali* that is on the surface of the fibers and in the solution surrounding the fibers, *by means of sulphate of alumina.*" (Emphasis by the Court.)

There is no better explanation of these inventions than that which is found in the specifications of the patent. It is therein stated:

"I have discovered that the *hydration is most rapid while the stock is in an alkaline condition* and that the hydration is the slowest when it takes place in the presence of a solution of sulphate of alumina which makes the fibers astringent, stiff and prevents them from absorbing the water of hydration and also makes the fibers more easily cut by the knives of the beating engine or the Jordan.

"In order, to produce rapid hydration with the minimum of power and in order to produce the best quality of paper, *I beat the stock while in a neutral or alkaline condition* and discharge it from the beating engine *without adding sulphate of alumina to produce an acid condition.*

"The fibers are then treated in the Jordan *while still in a neutral or alkaline condition* where it undergoes further degrees of hydration and refinement and after this action is completed and the stock is ready for the paper machine, *it is then mixed with sulphate of alumina to produce the acid condition necessary for the sizing,* after which it is passed to the screens or the paper machine." (Emphasis by the Court.)

## Original Invention

■ The present patentee is not "the original and first inventor" of the methods defined in the respective claims. These methods were revealed and claimed by Barnard and Caswell in a co-pending application filed on July 30, 1923, eleven months earlier than the patentee's application for the patent in suit. Patent No. 1,648,838 issued on this application on November 8, 1927, nineteen months after the patent in suit issued. This patent, notwithstanding this delay, is a valid reference. Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

The identity of invention is apparent upon a mere reading of the Barnard-Caswell patent, the disclosures of which are essentially identical with those embraced in their original application. The invention of this patent is described in the specifications thereof as follows:

"The object of this invention is to produce a paper from any of the usual cellulosic paper-making materials, e. g. chemical wood pulp, *but having a strength exceeding that of paper made from such materials* by the ordinary or usual processes.

"We have discovered that, if the pulp be beaten or milled *in the presence of certain alkalies* prior to the formation of the pulp into a web, a sheet may be formed which when dried has a bursting strength greatly exceeding that of paper which has been beaten or milled in the usual manner to effect the hydration thereof. More specifically we have discovered that, if the water, which is added to the mill or beater in the usual quantities for admixture with the pulp, *be rendered alkaline by the addition of ammonia* in certain proportions, optimum results are secured.

"In preparing the water for the beating operation, there is added thereto sufficient aqua ammonia having a predetermined $NH_3$ content so as to give *to the beating water the desired alkalinity.* * * *. Instead of using $NH_3$ in the form of aqua ammonia, we may employ an am-

monium salt, such as ammonium carbonate, with comparable results. * * *.

"We have made the further discovery that if to the diluted pulp, after being beaten with the ammoniated water, there be added certain soluble metallic salts, the bursting strength of the paper is further surprisingly increased. For this purpose *we have successfully used the sulphates of aluminum,* copper and zinc, with a further average increase in bursting strength of over 25%. * * *. To the diluted pulp is now added sufficient soluble salt, such as *sulphate of aluminum,* copper or zinc, *to react with the ammonia."* (Emphasis by the Court.)

These inventors, after thus describing their invention, claim:

"1. The herein described process of producing paper having an increased bursting strength, *which comprises beating or milling cellulose pulp to effect the hydration thereof in the presence of ammonia,* in conditioning the pulp for the web formation.

"4. The herein described process of treating cellulosic pulp in the formation of paper, *which comprises beating the cellulosic pulp to effect the hydration thereof in the presence of ammonia,* and then *adding aluminum sulphate."* (Emphasis by the Court.)

It is evident that the disclosures of the Barnard-Caswell patent are substantially identical with those of the patent in suit. There is little, if any difference, except in descriptive language, in either the specifications or the claims. The inventions of claim 1 of the former and claims 1 and 2 of the latter are identical, as are the inventions of claim 4 of the former and claim 3 of the latter. It would be impossible to practice the methods of the Barnard-Caswell patent without infringing the claims in suit.

It is well established that a valid patent may issue only to the "original and first inventor," the person "who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, * * *, *not known* * * * by others in this country, before his invention or discovery thereof, * * *." (Emphasis by the Court.) R.S. § 4886, as amended, 35 U.S.C.A. § 31; R.S. § 4920, as amended, 35 U.S.C.A. § 69; Alexander Milburn Co. v. Davis-Bournonville Co., supra; Osteen v. Ansco Photoproducts, 2 Cir., 27 F.2d 688; Stelos Co. v. Hosiery Motormend Corp., 2 Cir., 72 F.2d 405; Minnesota Min. & Mfg. Co. v. Coe, 100 F. 2d 429, 69 App.D.C. 256; Dyer v. Coe, 75 U.S.App.D.C. 125, 125 F.2d 192. It is equally well established that prior knowledge of the alleged invention, clearly revealed in an earlier application for a patent, is a valid defense in an action for infringement. Ibid. The patent in suit must be held invalid.

## Anticipation

Claims 1 and 2 of the patent in suit are void because of complete anticipation by and the lack of invention over the disclosures of Patent No. 1,140,799, issued to the present patentee on May 25, 1915. We quote the relevant disclosures:

"This invention relates to a *process of hydrating cellulose* or lignocellulose material, the particular application of the invention being *the treatment of pulp material used in the manufacture of paper.*

"I find that the *hygroscopic character of any cellulose material* is greater when it is *combined with alkali,* than when it is combined with acid, and that when it is in the basic condition, it has a *constant tendency toward greater hydration.* I also find that this tendency toward hydration can be still further increased by the addition of other materials in very small quantity, such as carbon bisulfid.

"The main object of this invention is to provide a *process of treating a cellulose* or lignocellulose *material* with a *dilute alkali,* an alkaline thiocarbonate or an alkali and carbon bisulfid or one of its compounds, whereby the *material will absorb water* and *become hydrated,* so that it can be ground by mechanical processes *into strongly fibrous material.*

" * * *. What is aimed at in my process is the weakest possible *alkaline condition of the fiber,* which means that a certain small percentage of alkali has been taken up by the acid radicals in the cellulose molecule. The advantages of the slightly basic condition of cellulose material for special purposes are not generally known, and the disadvantage of the acid condition is not known. For example, in the manufacture of sulfite cellulose, the product is made by an acid process and will naturally contain a small percentage of acid which cannot be removed by washing, this acid being either sulfurous or sulfuric acid.

"This is a great disadvantage in the making of strong fiber paper from sulfite pulp, for owing to the *acid character of this fiber it does not become hydrated* in the beating engine with the same facility *as if it were alkaline,* and the acid in its composition is constantly destroying the strength, especially when it is heated or dried during or after manufacture. On this account sulfite papers are generally weaker than those made from fiber isolated by an alkaline process.

"My process not only prevents the tendering action going on in a cellulose material which is acid, *but places it in a chemical condition for the rapid absorption of water,* and this *hydration* has much to do with *the strength that can be obtained from the fiber* when it is made into paper. Papers made from fiber isolated by the sulfite process will be, when using my process of treatment, as strong as any paper made from fiber prepared by any other method. This, however, is but a special application of the process, for *any fibrous material, which in its natural condition offers resistance to the absorption of water, can be made more hygroscopic by treating it with a very small amount of alkali* or alkali and carbon bisulfid." (Emphasis by the Court.)

The plaintiff, in an apparent endeavor to avoid anticipation, rests his present claim to patentable invention on the concept of hydrating the cellulose fibers in "both beater and jordan." It is evident, however, that this concept is not novel. The beater and the jordan, as a means of hydrating the cellulose fibers, were utilized singly and in combination in many paper mills long prior to the advent of the patent in suit. The jordan had, in fact, replaced the beater in many mills. See the opinion filed in the related suit, D.C., 57 F.Supp. 388, 391, 397.

There is obviously nothing in either claim 1 or claim 2 which patentably distinguishes their disclosures from the disclosures of the earlier patent to the plaintiff. The only distinctions urged are tenuous and without merit.

## Public Use

It clearly appears from the undisputed testimony that the inventions of claims 1 and 2 were in public use in the mills of the Hollingsworth and Vose Company for more than two years prior to the plaintiff's application for the patent in suit. This company manufactured a durable kraft paper for insulating cable. This paper was made from an alkaline pulp, the fibers of which were beaten and hydrated in both beater and jordan while in an alkaline condition. The cellulose fibers of this paper were wholly alkaline.

It should be here observed that the hydration of cellulose fibers, while in an alkaline condition, was common practice in the manufacture of unsized papers made from kraft pulp. The extraction of cellulose fibers by the sulphate process imparts alkalinity to the fibers, and this alkalinity is retained unless overcome by the introduction of the sizing ingredients.

## Product Claim

Claim 4 covers a "pliable paper product made from cellulose fibers, having the *interior* of each fiber *slightly alkaline* and the *surface* of each fiber *slightly acid.*" (Emphasis by the Court.) This product, as thus defined, is not a new "manufacture" but a mere improvement in an old "manufacture," resulting only from the application of the chemical process impliedly imported into the claim as the only means of producing the result. The product of this claim and the process of claim 3 are interrelated and inseparable.

This conclusion is supported by the patentee's description of the product. The patentee, after describing his process, describes the result of its application as follows: "The effect of this process is to produce a fiber which is *slightly alkaline* in its *interior* and *slightly acid* on its *outer surface.*"[2] (Emphasis by the Court.) There is no indication in either the claim or the specifications that the product, as thus defined, can be produced by any other process.

It follows that this claim is void. Western Electric Mfg. Co. v. Ansonia B. & C. Co., 114 U.S. 447, 5 S.Ct. 941, 29 L.Ed. 210; Red River Refining Co. v. Sun Oil Co., D.C., 29 F.Supp. 636, affirmed, 3 Cir., 112 F.2d 575. "While there may be instances in which a product may be patentable where the method of its production is not, and vice versa, nevertheless we regard it as sound law to hold that where, as seems to be the case here, the process claimed will produce only the product

---

[2] Specifications, page 1, lines 99 to 101.

claimed, and the claimed product can only be produced by the claimed process, the process not being patentable, the product cannot be. In such a case, they are so interrelated as that there is not that independence between them which renders the product patentable if the process is not patentable." In re Richter, 53 F.2d 525, 527, 19 C.C.P.A., Patents, 756.

This claim is invalid also because of its failure to meet the requirements of the statute, R.S. § 4888, 35 U.S.C.A. § 33; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232. The language of the claim is not sufficiently descriptive of the product therein defined.

### Infringement

#### Claim 2

The plaintiff charges that the method employed by the defendant in the manufacture of "corrugating board" and "bottom liner" infringes claim 2 of the patent. The accused method follows substantially the common practice of the prior art. The cellulose fibers, extracted from wood by an alkali process, are hydrated while in an alkaline condition by the "beating action" of the jordans. It is evident that under these facts the charge of infringement is sustained only if we accord to the claim a construction sufficiently broad to embrace the common practice of the prior art.

#### Claim 3

The plaintiff charges that the method employed by the defendant in the manufacture of certain papers and "bottom liner board" infringes claim 3 of the patent. It clearly appears from the testimony offered by the plaintiff that the accused method violates the teachings of this claim, construed in the light of the specifications.

#### Claim 4

The plaintiff charges that certain papers manufactured by the defendant (Exhibits 13, 14, 15a, 15d, 116, 117 and 118) infringe claim 4 of the patent. It is alleged that these papers are "pliable papers," the cellulose fibers of which possess an acid interior and an alkaline exterior. The proof offered in support of this allegation rests entirely on the speculative conclusions of experts whose testimony is far from persuasive. This "ab-

sence of actual fact proof is not met by the presence of expert speculations no matter how voluminous." Fried, Krupp, etc., v. Midvale Steel Co., 3 Cir., 191 F. 588, 591; see also George K. Hale Mfg. Co. v. Hafleight & Co., 3 Cir., 52 F.2d 714.

The burden is upon the plaintiff to prove infringement by a fair preponderance of evidence. It is our opinion that the evidence here presented is not of sufficient weight to support this burden.