**METROPOLITAN ENGINEERING CO. v. COE, Com'r of Patents.**

**No. 6278.**

United States Court of Appeals for the District of Columbia.

Argued Jan. 9, 1935.

Decided April 29, 1935.

Melville Church and C. B. Des Jardins, both of Washington, D. C., and D. Anthony Usina, of New York City, for appellant.

T. A. Hostetler, Sol. of the Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill, filed under section 4915, Rev. St., as amended (35 USCA § 63), seeking to authorize the issuance to appellant (assignee of applicant Murray) of a patent on a water tube boiler.

Claims 19 and 21 to 27, inclusive, were rejected by the Patent Office; in the court below counsel for defendant (appellee) admitted claim 24 to be patentable and it was granted, but the court sustained the action of the Patent Office as to the other claims. We reproduce claim 21 as representative: "A steam generator including in combination approximately horizontal water tubes heated by convection and a furnace having a combustion chamber below said overhead tubes, a wall of said combustion chamber being composed of substantially upright tubes connected into the circulation of the generator, said tubes being spaced apart a distance not substantially greater than their diameter, and metal extensions from said tubes united thereto with good heat conducting joints and practically closing the spaces between them and providing an increased area exposed to the direct radiant heat of the burning fuel and conducting such heat to the tubes, each of said extensions being limited in width as to maximum to the diameter of the tubes, the tubes and extensions constituting a substantially closed wall exposed on the inner surface only to the combustion gases, the outer surface of such wall being covered with a sheathing of insulating material united to and supported by said walls."

It will be noted that these claims are not limited to any particular type of boiler —stationary, locomotive, marine, or others.

In his specification Murray, in explaining how the feed water is introduced into the boiler, stated: "Introducing the feed water through the headers 32 and passing it through the walls of the furnace preheats the water and cools the walls. This enables me to build the walls of structural sections of thin cross-section, instead of making walls of masonry or brickwork as heretofore used for stationary boilers." This statement falls short of limiting the scope of the application to stationary boilers, as suggested by appellant. Certainly the claims contain no such limitation. "The scope of letters-patent should be limited to the invention covered by the claim," and, "though the claim may be illustrat-

ed, it cannot be enlarged by the language used in other parts of the specification." Lehigh Valley Railroad Co. v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 639; Western Electric Mfg. Co. v. Ansonia Co., 114 U. S. 447, 452, 5 S. Ct. 941, 29 L. Ed. 210; Lucke v. Coe, 63 App. D. C. 61, 69 F.(2d) 379.

In the present case the basic idea consists in providing a combustion chamber "composed of substantially upright tubes connected into the circulation of the generator." For the refractory brick walls of the combustion chambers of certain types of boilers Murray has substituted water tubes in circulation with the main boiler unit, the wall itself constituting the boundary of the combustion chamber. "In other words (as stated by appellant's expert witness), the refractory wall was replaced by a wall of tubes with metallic fillers between the tubes to close the spaces between the tubes. An insulating material was added on the outside of the tubes to keep the heat of the combustion chamber and the heat of the tubes from being dissipated to the outside atmosphere."

The patent to Griffith, No. 743,271, discloses Murray's general combination; that is to say, it discloses a water tube boiler having inclined tubes positioned over a combustion chamber formed entirely of tubes and insulating material on the outside of the tubes. But in Griffith's construction the tubes constituting the side walls of the combustion chamber are not spaced apart, and the outer insulating material is not carried by the wall.

The patent to McClellon, No. 1,474,156, discloses the tubes of the side walls of the combustion chamber spaced apart with connecting fins and an outer covering of insulating material; it relates to a locomotive boiler.

Appellant contends that locomotive boilers and the boiler of the application relate to different arts. The same contention was made in the Patent Office, and was satisfactorily answered by the Board of Appeals as follows: "We have given this matter careful consideration in view of the argument in the brief, but it is our opinion that the structure of the tubular side walls with their insulated coverings have substantially the same functions in the two types of boilers and therefore we regard McClellon as pertinent art." The Board continued: "We may take cognizance of the fact that it has been old for years to

plaster asbestos and similar insulating material directly upon furnace walls and we are satisfied, therefore, that there would be no patentable distinction in supporting the insulation in this way on the wall of McClellon instead of holding it in position by an outer covering." Evidently Murray when he wrote his specification did not regard the application of insulating material as constituting novelty, for he says: "This insulating material can be plastered on after the metal work has been erected. This insulating material may be a magnesia mixture or plastic compounds of asbestos and like heat insulators. * * * The metal fillers or extensions of my improved boiler form a shield which protects *any* outside sheathing, the tubes with the metal fillers or extensions constituting in effect a wall of the combustion chamber *so that the plastic material* on the outside may be *a mere insulating sheathing* supported by the wall of tubes and fillers." (Italics ours.)

Appellant insists that the Griffith boiler is inoperative and, therefore, not a pertinent reference. This contention is based upon the opinion of appellant's expert witness; but the Primary Examiner is equally skilled in the art, and he passed upon the question originally. Moreover, the Board of Appeals must have considered the Griffith boiler operative, else it would have rejected it as a reference. As we have seen, their decision denying appellant's claims was based largely upon the Griffith patent. The fact that a machine is patented is some evidence of its operativeness, as well as of its utility. Dashiell v. Grosvenor, 162 U. S. 425, 432, 16 S. Ct. 805, 40 L. Ed. 1025. "When the question is, whether a thing can be done or not, it is always easy to find persons ready to show how not to do it." Webster Loom Co. v. Higgins, 105 U. S. 580, 586, 26 L. Ed. 1177. In A. B. Dick Co. v. Barnett (C. C. A. 2) 288 F. 799, 801, the court said: "We are of opinion that it is advisable to remember first how very easy it is not to do a thing, and how small is the step from not wanting to do a thing to declaring that it cannot be done." See, also, Hildreth v. Mastoras, 257 U. S. 27, 34, 42 S. Ct. 20, 66 L. Ed. 112; Scovill Mfg. Co. v. Satler (D. C.) 21 F.(2d) 630; Remington Cash Register Co. v. National Cash Register Co. (D. C.) 6 F.(2d) 585, 618, 619. We are clearly of the view that the prima facie presumption of operativeness attaching to the Griffith patent has not been overcome. The structure of this patent is strikingly similar to the

structure of Murray's application. In each case the tubes of the four walls of the boiler surround or form a combustion chamber and are subjected to direct heat from the fuel.

Decree affirmed.

Affirmed.