## BAKELITE CORPORATION v. COE.
### No. 6523.

United States Court of Appeals for the District of Columbia.

Decided March 23, 1936.

Ralph E. Parker and Charles H. Potter, both of Washington, D. C., for appellant.

R. F. Whitehead, Solicitor of Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill, filed under section 4915, R.S., as amended (35 U.S.C.A. § 63), to authorize the issuance of a patent to appellant (assignee of applicant Redman).

Three claims are involved; claims 10 and 11, and a third claim which was denied by the Examiner, canceled, and no appeal taken to the Board of Appeals.

Claim 10 is illustrative of claims 10 and 11, and reads as follows:

"As a new article of manufacture, an abrasive implement comprising a flexible base, abrasive grains, and a binder for securing said grains to said base, said binder including a condensation product of a phenolic body and an aldehyde characterized by flexibility inherent in the product per se when set by the action of heat to the infusible stage."

The product covered by these claims is a flexible abrasive sheet of sandpaper type to which the abrasive grains are cemented by phenolaldehyde synthetic resin.

The expression in the claim "condensation product of a phenolic body and an aldehyde" means the synthetic resin formed by reacting the aldehyde with a phenolic compound. The words, "set by the action of heat to the infusible stage," mean hardened by heating to a condition wherein the resin cannot be caused to flow. The final product is characterized by inherent flexibility.

Claims 10 and 11 were rejected as being met by the patent to Carlton, 1,775,631, September 16, 1930. Carlton fully describes sandpaper consisting of a backing sheet, abrasive grains, and a bond. The bond is described as a phenol formaldehyde resin containing a phenolic body and an aldehyde. According to the patent, the materials theretofore used were open to objections which the patent was designed to overcome. In the specification it is stated: "The principal objects of my present invention are the provision of an abrasive article having a binder which functions efficiently; the provision of an abrasive article having a binder characterized by the desired degree of flexibility. * * * I have discovered that resinous materials are preferable not only to gums (which are more or less water soluble) but also to gum-resins and to hardened oils for certain purposes contemplated by me, and particularly synthetic resins as peculiarly adapted for my ends for a number of reasons. * * * I have found that various aldehyde-phenol materials are available, but phenol-formaldehyde products of condensation is preferred by me as a major constituent of the binder, that is as best attaining the desired ends, viewed from certain aspects. * * * Sandpaper made in accordance with the disclosure of my present invention is characterized by the desired degree of flexibility without adverse deleterious effects, great resistance to water and moisture generally, and to various other solvents employed in the arts, and a bond of great mechanical strength which is capable of sustaining the grit even in the case of the coarser grits where the strains are relatively high. * * * I have further discovered that the flexibility of the resultant article may be somewhat varied by heat

treatment after the application of the binder and grit. I have further discovered that by carrying out my improved process I am enabled to utilize resinous material without being under the necessity of employing oils in connection therewith, as have been heretofore employed in processes known to me. * * * "

Claims 1 and 3 of the patent are as follows:

"1. The new article of manufacture, flexible sandpaper, which includes a backing, a grit or layer of abrasive particles, and a bond for uniting the grit to the backing including a synthetic resinous condensation product which is solidified to a flexible and waterproof state."

"3. The new article of manufacture, flexible sandpaper, which includes a backing, a grit or layer of abrasive particles, and a bond for uniting the grit to the backing including a synthetic resinous condensation product which is solidified to a flexible and waterproof state by the application of heat thereto."

The applicant (appellant) insists that he has invented sandpaper characterized by inherent flexibility with infusibility or inertness to heat. He insists that he has produced this result "by turning to the field of flexible resins for a bonding agent." He does not contend that he taught the industry how to make a flexible resin or that his invention lies in the flexible resin as such, "because flexible resins were, per se, known. What he did discover and teach the abrasive industry (he insists) was that by combining the elements of a flexible base, abrasive grains and a flexible resin as a bonding agent (which latter could be set to the infusible state and remain flexible in that state), a flexible abrading paper or cloth could be obtained." He prefers to use the process for making a flexible phenolic condensation product described in the patent to Byck, No. 1,590,079, June 22, 1926. As pointed out by the Patent Office, the Byck patent emphasizes the plasticizing effect of the tung oil employed in the composition.

Two expert witnesses produced by the applicant were of the opinion, based upon experiments, that the Carlton patent does not disclose a sandpaper having as a bonding agent a resinous body characterized by the combined properties of flexibility and infusibility. The expert tribunals of the Patent Office evidently were of a contrary opinion. "When the question is, whether a thing can be done or not, it is always easy to find persons ready to show how not to do it." Webster Loom Co. v. Higgins, 105 U.S. 580, 586, 26 L.Ed. 1177. Again, in A. B. Dick Co. v. Barnett (C.C.A.2) 288 F. 799, 801, the court said: "We are of opinion that it is advisable to remember first how very easy it is not to do a thing, and how small is the step from not wanting to do a thing to declaring that it cannot be done." See, also, Metropolitan Engineering Co. v. Coe, 64 App.D.C. 315, 78 F.(2d) 199.

 We agree with the Patent Office that the Carlton patent discloses the product described in claims 10 and 11.

While the third claim is not properly before us [because not passed upon by the Board of Appeals and therefore may not be presented or considered in the bill in equity under section 4915, Lucke v. Coe, 63 App.D.C. 61, 69 F.(2d) 379], everything we have said concerning claims 10 and 11 apply with equal force to that claim.

The decree is affirmed.

Affirmed.