**TROJAN, INC., Plaintiff,**

v.

**SHAT–R–SHIELD, INC., Defendant.**

**Civ. A. No. 85–143.**

United States District Court,
E.D. Kentucky,
at Lexington.

June 22, 1988.

Robert B. Jones, Stephen B. Heller, Chicago, Ill., Timothy Cone, Lexington, Ky., for plaintiff.

David R. Irvin, Lexington, Ky., Charles Lee Thomason, Newark, N.J., for defendant.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

SUHRHEINRICH, District Judge, Sitting By Designation.

I. Jurisdiction and Venue are conceded by all parties and are not at issue.

II. The findings of fact were made at the conclusion of trial without benefit of a transcript.

## INTRODUCTION

Plaintiff, Trojan, Inc. (hereinafter "Trojan"), brought this declaratory judgment action pursuant to Title 28, United States Code, §§ 2201, 2202, and 1338(a), raising two issues: (1) whether it had infringed United States Patent 4,506,189 (hereinafter the "Nolan patent"), and (2) whether the Nolan patentee, defendant Shat–R–Shield, Inc. (hereinafter "Shat–R–Shield"), is a holder of a valid patent.

In response to the complaint, Shat–R–Shield filed a counterclaim for infringement of the Nolan patent. The counterclaim seeks a preliminary and final injunction against continued infringement of the aforementioned patent, an accounting for damages, an assessment of interest and costs, an award of attorneys' fees based upon the exceptional nature of this case and upon the plaintiff's willful and wanton acts of infringement. However, the Court shall not consider an accounting for damages under defendant's counterclaim as defendant rested without producing any evidence of monetary damage. The defendant seeks to prove damages after closing by submitting a portion of a transcript, Defendant's Exhibit 106, in a brief. The Court expressly rejects consideration of that exhibit and brief insofar as they relate to money damages. Additional relief will be discussed later.

Both parties herein are manufacturers of fluorescent light bulbs. In order to protect the health and safety of the public and to insure the integrity of the environment, both parties have utilized a certain process to coat the fluorescent bulbs. The fluorescent bulbs are coated with a plastic coating that is applied to the bulb in such manner that when the bulb accidentally breaks, the plastic coating will contain the glass shards and prevent them from being scattered into the environment.

This action was tried without a jury on April 25, 1988. At the request of all counsel, as a guideline for establishing the order of proof of infringement and invalidity of the claim, the Court followed the recommendations of the Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, as outlined in his article "On Simplifying Patent Trials," 116 F.R.D. 369 (1987).

Defendant Shat–R–Shield presented the following evidence:

### Witnesses

1. James D. Nolan
2. Joseph Satterlee

Depositions:

1.  George S. Evans
2.  Robert W. Bushroe
3.  Robert McManigal

Exhibits:

Nos. (2) The Nolan Patent, No. 4,506,-189, March 19, 1985

(75) Sales Brochure for Hytron SAF-T-COTE fluorescent lamps

(93) A SAF-T-COTE fluorescent lamp of Trojan

(94) A SAF-T-COTE fluorescent lamp of Trojan

(95) A SAF-T-COTE fluorescent lamp of Trojan

(100A) A SHAT-R-SHIELD Fluorescent lamp of Shat-R-Shield

(101) Blow-up of Figures 1, 2, 3 and 4 of Nolan Patent

(102) Blow-up of Figures 5 and 6 of Nolan Patent

(103) Blow-up of Claim No. 3 of Nolan Patent

(13) Blow-up of fluorescent tube and end cap with PVC coating

(97) Trojan's Supplement to protest re: reissue of Trojan Patent

(53) Deposition of George S. Evans taken December 10, 1985

(54) Deposition of Robert W. Bushroe taken March 27, 1986

(55) Figure 1 and 2 of drawing of fluorescent lamp envelope

(105A-V) 22 patents for which J. Ralph King's law firm is the attorney of record

Plaintiff Trojan presented the following evidence:

Witnesses:

1.  Joseph Satterlee
2.  J. Ralph King

Exhibits:

Nos. (20) 3-piece tube guard

(15) Hytron Price list for incandescent bulbs effective July 15 thru October 15, 1984

(16) Hytron Invoice of sale of 60 Tuff-Skin·bulbs (September 2, 1984)

(18) Hytron Invoice of sale of 120 SAFE-T-Cote bulbs (June 1975)

(19) U.S.P. & T. Office Certified Manual of Classification (November 1987)

(3) The Evans Patent, issued August 31, 1971, # 3,602,759

(4) The Thomas Patent, issued November 16, 1971, # 3,621,323

(8) Claims 1 and 2 of Nolan Patent as prior art (Evans)

(9) Claims 3 and 4 of Nolan Patent as prior art (Evans)

(10) Claims 1 and 2 of Nolan Patent as prior art (Thomas)

(11) Claims 3 and 4 of Nolan Patent as prior art (Thomas)

(12) Coated incandescent lamps made by Thomas teachings (prior art—Nolan 1 and 2)

(13) Coated incandescent lamps made by Thomas teachings (prior art—Nolan 3 and 4)

(1) Amended Nolan Patent application filed August 2, 1982

(2) Abandoned Nolan Patent application filed January 17, 1977

(5B) Photograph of "Tuff-Skin" coated incandescent bulb

(5C) Photograph of Hytron-K coated incandescent bulb

(14) Van Laar Patent (flash lamp, January 5, 1955); Boyce Patent (fluorescent, January 23, 1962); Campagna Patent; Audesse Patent; Shank Patent; Sentementes Patent; and Koerper Patent

(24) Quirk Patent assigned to Sylvania (patented August 27, 1963)

(27) Reissue of Tooke Patent

(29) A POPGUARD fluorescent lamp by Alpha Industries

## FINDINGS OF FACT RE: INFRINGEMENT

1. James D. Nolan has been in the plastic coating business for approximately twenty years. He has been president of Shat–R–Shield since 1978. Shat–R–Shield, the owner of the patent in suit, began as Incoplas, Inc., a company partially owned by Nolan. Incoplas, a job-shop, produced various products with a plastic coating. It was employed by DuPont to coat plastic bottles with a coating known as "Surlyn."

2. About 1972, Nolan first attempted to coat bulbs, working at that time with incandescent bulbs. These bulbs were not commercially successful. Subsequently, Nolan worked with Tom Madonia, et al., at Westinghouse to produce successfully coated fluorescent bulbs.

3. In 1978, Nolan bought out that portion of Incoplas that was related to the coating of fluorescent bulbs. That company is Shat–R–Shield and is today a commercial success in the business of coating fluorescent bulbs.

4. Previous to Nolan's patent, fluorescent bulbs were covered by a plastic tube guard which consisted of three separate pieces, viz., a plastic cylinder and two plastic parts that were attached to either end of the cylinder with the fluorescent bulb being contained in the middle of the cylinder. This tube was not successful because it added length to the fluorescent bulb and would not allow the bulb to have a proper fit. In addition, if the bulb with the shield was accidentally dropped, the ends of the tube guard would dislodge, thus causing the glass to shatter within the environment.

5. Nolan's idea was to plastic-coat the envelope, that is, the glass surrounding the fluorescent bulb "in situ," in one piece that would encase both the glass tubing and the two metal end caps. To form this one-piece plastic sheath on the fluorescent bulb, the bulb is heated and then placed in a fluidized bed of Surlyn. The length of the coating covering the end caps is predetermined by use of a mask so that the coating does not cover the electrical connecting pins. This insures a good fit into the fixture and, if the bulb is dropped, prevents the end pieces from coming out. Thus, the coating protects the environment from shattering glass.

6. Nolan applied for a patent on January 17, 1977; this application was amended five times until it was ultimately issued on March 19, 1985. The plastic-coated fluorescent bulb utilizing the coating process covered by the Nolan Patent is sold by the defendant under the brand name of "SHAT–R–SHIELD," as evidenced by Defendant's Exhibit No. 100A.

7. In 1984, less than one year before the Nolan patent issued, Hytron Electric Products, a division of plaintiff Trojan, began manufacturing and selling fluorescent bulbs also coated with a PVC material. The purpose of this coating was to contain the glass shards when the bulb was broken. This lamp bears the brand name of "SAF–T–COTE," and is seen in Defendant's Exhibits 93, 94, and 95.

8. While it is believed that there are different methods used to coat the fluorescent bulbs, the Court finds that the end product is the same, viz., a plastic-coated fluorescent bulb that will not permit glass shards to spread into the environment when broken.

9. Nolan testified, and the Court finds, that Defendant's Exhibits 93, 94, and 95 are substantially the same as Nolan's invention, and that Trojan's SAF–T–COTE does infringe on the Nolan patent.

10. Joseph Satterlee is an employee of the defendant. For sixteen years, he has been the engineering manager in charge of product development. Prior to designing the machinery that produced the Trojan SAF–T–COTE, Satterlee had a conversation with DuPont, the supplier of the material used to coat the defendant's plastic fluorescent bulbs. At about the same time, Mr. Satterlee had heard of Incoplas and had seen and evaluated the SHAT–R–SHIELD fluorescent bulb.

11. The Court finds that the claims of Defendant's Exhibit 2, as set forth and

found in the Nolan patent, have been infringed by Trojan's SAF–T–COTE.

The Nolan patent claims are:

1. In a fluorescent lamp including a glass envelope and an end cap at each end of said glass envelope, the improvement comprising:

integrally formed coating means surrounding said glass envelope and a predetermined portion of each of said end caps, and

said coating means being transparent to light emanating from said fluorescent lamp and upon said glass envelope being broken into glass shards said coating means for maintaining said glass shards and said end caps in association thereby preventing the broadcasting of said glass shards.

2. In the fluorescent lamp according to claim 1 wherein said integrally formed coating means is a coating of polymeric material formed in situ.

3. In a fluorescent lamp including a glass envelope, a pair of end caps with each end cap being secured to an end of said glass envelope, and at least one electrical connecting pin provided on each of said end caps, the improvement comprising:

an integrally formed coating of polymeric material formed in situ and surrounding said glass envelope and predetermined portions of said glass envelope and not including said electrical connecting pins, and

said coating of polymeric material being transparent to light emanating from said fluorescent lamp and upon said glass envelope being broken into glass shards said coating of polymeric material maintaining said glass shards and said end caps in association thereby preventing broadcasting of said glass shards.

4. In a fluorescent lamp according to claim 3 wherein said coating of polymeric material is formed in situ.

The only difference that Mr. Satterlee claims exists in the processes used by Trojan and Shat–R–Shield is as to the use of the word "predetermined." Mr. Satterlee claims the meaning of the word "predeter-mined" varies significantly between the two coating processes. Mr. Satterlee bases his claim that the two processes differ on the use of the word "predetermined." However, as seen by Mr. Satterlee's own testimony, he himself does not consistently define "predetermined."

QUESTIONS ON DIRECT BY MR. RHODES:

Q. Now, Mr. Satterlee, on each of the end caps of the Trojan SAF–T–COTE fluorescent lamps, is enough of the end cap coated so that each side, when the glass is broken, the end caps are held together?

A. Yes.

Q. On the Trojan SAF–T–COTE fluorescent lamps, are the connecting pins coated?

A. No, sir.

Q. And it is determined beforehand that the connecting pins are not coated; is that correct?

A. Yes.

Q. And it is determined beforehand that you coat sufficient of the end caps that they function as you described, they hold the plastic coating and the end caps together to prevent the broadcasting of glass shards?

A. Yes, sir.

Q. And your machine operates and determines in advance that that much, at least that much, of the end caps are coated?

A. Yes, sir.

Q. Or it wouldn't work?

A. That's correct.

Q. And you determine that in advance?

A. Yes, Sir.

CROSS BY MR. JONES:

By Mr. Jones:

Q. Mr. Satterlee, what does coating a predetermined portion of the end cap mean to you as an engineer?

A. That would be bringing the coating to a constant point on the end cap.

Q. Are Trojan's lamps coated over a predetermined portion of the end cap, as you understand that term?

A. No, sir.

Q. Mr. Satterlee, in the Trojan lamps, is it necessary that the coating extend over a predetermined portion of the end cap, as you understand that term, in order to keep the end cap from flying out?

A. No, sir.

By Mr. Rhodes:

Q. Now, Mr. Satterlee, Mr. Jones asked you if you had an understanding of the work predetermined as an engineer, and you answered yes?

A. Yes.

Q. Would you please tell me what that understanding is?

A. It is bringing the coating to a constant point on the end cap.

Q. That is what the word "predetermined" means to you?

A. Yes, sir.

Q. Now, do you recall I examined you this morning and I asked you if on each and every Trojan safety coated fluorescent lamp, the end cap was coated such that when the glass envelope broke, the protective coating holding onto the end cap would hold the glass shards inside and you answered yes?

A. Yes, sir.

Q. Is it therefore not true, Mr. Satterlee, that you must determine in advance how much that's going to take to hold onto the end cap or you don't know whether or not it's going to hold on and be a safety coating?

A. Yes.

Q. Then you predetermined it? You determine it in advance?

A. Are you looking for an answer?

Q. Yes, you don't make sloppy coating, do you, you make coating that works, right?

A. Yes, sir, but we do not determine it by—

Q. Do you determine it in advance, Mr. Satterlee?

A. Yes.

Q. That you coat sufficient that it holds on if the glass breaks?

A. Yes, sir.

12. Defendant's claim of patent infringement is further strengthened by plaintiff's sales brochure that promotes its SAF–T–COTE (Defendant's Exhibit 75). On page two the following is stated:

Each new SAF–T–COTE Fluorescent Lamp is covered from end cap to end cap with a tough, protective, clear plastic material, custom formulated and precisely developed for the safety coating of Hytron Fluorescent Lamps. Should the lamp break, virtually all of the harmful debris is inside the protective coating.

13. Although the Court finds that Satterlee's testimony is sufficiently specific as to the definition of "predetermined portion," the Court does not find Satterlee's testimony credible in all instances. The Court believes that he was not candid in his testimony as to the meaning of "predetermination." When considering his testimony as whole, as previously quoted, it is clear that Mr. Satterlee knows exactly what is meant by defendant's claim of predetermination and that, albeit by a different process, Trojan also predetermines the degree of PVC that will cover the end caps.

With the exception of the dispute over the meaning of the word "predetermination," which the Court finds Mr. Satterlee makes more in form than in substance, Satterlee admits that SAF–T–COTE is identical to the Nolan patent.

## CONCLUSIONS OF LAW AS TO THE INFRINGEMENT CLAIM

1. The burden of proof required to prove a claim for patent infringement is by a preponderance of the evidence. *Saginaw Products Corp. v. Eastern Airlines, Inc.,* 615 F.2d 1136 (6th Cir.1980); *De Cew v. Union Bag & Paper Corp.,* 59 F.Supp. 323 (D.C.N.J.1945).

2. The Court found that the two end products made by these parties are virtually the same. Trojan's SAF–T–COTE lamp "performs substantially the same function in substantially the same way" to yield the same result as the lamp claimed by the Nolan patent. *Atlas Powder Co. v. E.I. DuPont DeNemours,* 750 F.2d 1569, 1579 (Fed.Cir.1984); *TWM Manufacturing*

*Company, Inc. v. Dura Corp.*, 722 F.2d 1261, 1269 (6th Cir.1983).

3. Shat–R–Shield has proved its claim of patent infringement by a preponderance of the evidence.

### INVALIDITY

Trojan presents a multi-tiered argument to support its claim that the Nolan patent is invalid, as set out below.

Generally speaking, Trojan contends that the Nolan patent is not valid because the application violates Title 35, United States Code, §§ 102, 103, and 112.

Section 102 basically addresses the novelty of the patent, that is, whether the invention has been known or used prior to the present applicant.

Section 103 speaks to the obviousness of the invention; that is, whether the invention has been covered by prior art and is obvious to a person having ordinary skill in the art to which the subject matter pertains.

Section 112 addresses the form of the application and goes to the specificity of the patent application and its claims.

More specifically, Trojan claims that the Thomas patent, No. 3,621,323 (Plaintiff's Exhibit 4), issued on November 16, 1971, shows a prior state of the art or is obvious; therefore, Trojan contends that the Nolan patent should be declared invalid. The Thomas patent concerns a plastic-coated incandescent bulb.

Furthermore, Trojan also claims that since Nolan knew of the Thomas patent prior to filing his patent application, he was under a duty to disclose the Thomas patent to the examiner and that such non-disclosure renders the Nolan patent invalid.

To support its validity claim, Trojan offered, in addition to the testimony of Joseph C. Satterlee, the testimony of its expert witness, J. Ralph King.

### FINDINGS OF FACT RE: INVALIDITY CLAIM

1. J. Ralph King is a patent attorney. As part of his previous training, he practiced patent law in Washington, D.C., and was a patent examiner in the United States Patent and Trademark Office. It is King's position that the Patent Office erred in the issuing of the Nolan patent.

2. King's conclusion is premised on his theory that the patent examiner missed certain key subclassifications. There is a manual for patent examiners to determine under which classification or subclassification the particular invention falls (Defendant's Exhibit 19). This gives the patent examiner an idea of what old patents to review to see if the proposed patent adopts prior state of the art. King stated that the examiner did not adequately research the pertinent subclasses and crossreferences and therefore overlooked and failed to review two particular patents, one designated as the Evans patent no. 3,602,759, and the other the Thomas patent no. 3,621,323. King opined that if the examiner had reviewed these patents they would have demonstrated that the prior state of the art was adopted and that the Nolan application should have been rejected.

3. For the following reasons stated in the finding of fact analysis, the Court does not find King's testimony to be persuasive, nor does it find King to be credible. The Court does not give his opinion any weight.

a. One of the factors on which this finding is based is King's demeanor, which is too subjective a standard to be adequately reviewed by an appellate court.

b. However, there are other more objective factors demonstrating King's bias, as follows:

(1) He referred to plaintiff's claim as "our claim." While he hastened to add that he meant to say "Trojan's claim," the Court cannot believe such misstatement is a mere slip of the tongue, as King has been retained to perform future work for the plaintiff.

(2) King is inconsistent as to the meaning of "predetermined." King's definition on the stand of what is required to explain the term "predetermined" is not the same as he himself has used this term repeatedly in some twenty-two other patent claims

that were prepared by his law firm and filed with the Patent Office. These twenty-two patents are referred to collectively as defendant's Exhibit 105A–105V.

(3) King was not familiar with his own client's previous positions regarding the Van Laar and Thomas patents, as discussed *infra.*

(4) The fact that King had to further review the evidence in his file overnight to continue his testimony the next day leads the Court to find that King was merely retained to repeat some legal terms of art and was not an aid to the trier of fact.

This finding of noncredibility alone would prohibit Trojan from meeting its burden of proof on its invalidity claim, as defined in the Conclusions of Law. The Court does, however, analyze the other points raised in plaintiff's claim in the following findings of fact:

4. The Evans patent, Plaintiff's Exhibit 3, patented August 31, 1971, has an electric lamp that is a fluorescent bulb enclosed using pre-shrunk plastic retention. It is King's position that the shrunk-fit plastic sheaths are done "in situ," thus making them the same as the Nolan patent. However, the claims of the invention do not demonstrate that the process is done "in situ." To support his conclusion, he quotes the following language found in the Evans patent:

> The foregoing objects, and other advantages which will become apparent as the description proceeds, are achieved in acceptance with the present invention by enclosing all or part of the lamp in a sleeve that is fabricated from shrinkable light-transmitting plastic. Preferably the sleeve is made of heat-shrinkable plastic that is initially of such dimensions xxx that it will fit loosely over the lamp and upon being heated will shrink and form a smooth, tight-fitting sheath that conforms to the shape of the lamp which it encloses.

Evans Patent No. 3,602,759, Col. 1, Lines 55–65.

The Court rejects King's statement and, instead goes to the most valid source, the deposition of George S. Evans, the inventor

of the Evans patent (Defendant's Exhibit 53). On page 30 of that deposition, when the Evans patent is being discussed, the following question and answer appear:

Q. Mr. Evans, referring again to your patent, I believe it is P–2L for identification, just to clarify in case I don't understand it correctly, the protective coating in your patent is formed separately and is not formed *in situ* on the tube.

A. That's right.

This testimony of Mr. Evans was not reviewed by Mr. King prior to his testifying.

5. Corroborating the statement of George Evans is the deposition of Mr. Robert H. Bushroe (Defendant's Exhibit 54). He worked with George Evans at the Westinghouse Lamp Corporation to develop a particular lamp specifically for the Sky Lab photolight application. He therefore is intimately involved with and has complete knowledge of the Evans patent. On page 21 of his deposition Bushroe states as follows:

Q. All right. That was not present in Sky Lab?

A. That is correct, it was not present. The embodiment is one in which it goes over the glass envelope.

Q. Only?

A. Yes.

Q. Okay, and not the end caps?

A. Right.

6. An excerpt from the deposition of Robert McManigal, fluorescent marketing manager at Westinghouse from 1969 to 1975, clearly states that Westinghouse never commercially sold a fluorescent bulb coated as shown in the Evans patent. Other than the Sky Lab project, the Evans patent was never used.

7. Based on the foregoing findings in paragraphs 5 and 6, the Court finds that the Evans patent was not practical and could not be used successfully commercially.

8. The Thomas patent No. 3,621,323 involves an incandescent bulb and is similar to the Van Laar patent, which the examiner

specifically looked at in reviewing the Nolan application. He went on to find the Nolan invention to be patentable.

9. While King states that the Thomas patent shows the state of art and the obviousness of the technology, he was not familiar with his client's own position as it relates to the Thomas patent in previous litigation filed on June 2, 1981. It is interesting to note that King condemns the examiner for failure to review the prior art, but when King had the obligation to review for a fee to protect his client he was not given all of the information regarding previous patents of which his client was aware. As a matter of fact, in the evening between his first and second day of testimony during the trial, he reviewed some of the materials which his client had failed to provide him previously so as to testify. The Court finds that Mr. King was a witness purchased merely to echo certain words of art in a patent case and is not believable.

10. The Court finds that Trojan has taken inconsistent positions on the similarity, *vel non*, between the Van Laar patent and the Thomas patent. At trial, Trojan advocated that these two patents were not similar, while in 1981, Trojan held the opposite view, as is found in Defendant's Exhibit No. 97. The following appears in that exhibit:

> With this history of prosecution of the '323 patent in mind, there can be no doubt that it would not have issued if the Examiner had known about either the Wright patent, 2,114,201, (Exhibit 10), or the *Van Laar et al.* patent, 2,868,670, (Exhibit 5). (Emphasis added).

Defendant's Exhibit 97, Supplement to Protest of Trojan, Inc. under 37 C.F.R. § 1.291 and Brief in Support of Protest, page 21. Exhibit 97 further states:

> Thus, the Van Laar patent discloses substantially all the features of claim 1 of the '323 patent [Thomas] and, if not anticipatory, clearly renders the subject matter obvious to a person having ordinary skill in the art.

Id. at 23.

11. King further states that Frank Thomas and his attorney, H.D. Jones, had actual and not merely constructive knowledge of the Wright and Van Laar patents, yet failed to disclose them to the examiner. (Plaintiff's Exhibits 4, 9, 11, and 12.)

12. Assuming this statement to be true, it is immaterial because even though applicant and his present attorneys had access to the initial search reports which cited the Wright and Van Laar patents since the time this reissue application was filed, it was only through the efforts of the protester, Trojan, that this information *finally* came to light. Therefore, any such nondisclosure by Frank Thomas and H.D. Jones is not significant to this action.

13. The Court finds that the Van Laar (a flash bulb), the Thomas (incandescent bulb), and Evans (fluorescent bulb) patents are similar enough that the review of the Van Laar patent alone would be sufficient for the examiner to review in determining the patentability of the Nolan invention.

14. The Court finds as a matter of fact that the Nolan invention is patentable and that the Nolan patent has been infringed.

15. The Court further finds that the existence of the Evans and Thomas patents does not invalidate the Nolan patent and does not disclose prior state of art or obviousness.

16. In light of the findings of fact set out above in paragraph nos. 3–12, the Court further finds that Nolan did not violate his duty to disclose the Thomas patent to the Patent Office because the Van Laar patent, which the examiner evaluated in his analysis of the Nolan application, is sufficiently similar to the Thomas patent that disclosure of both the Van Laar and Thomas patents was not required.

17. The Court also finds that the Evans patent would not have issued if the examiner had looked at the Thomas patent.

18. The Court finds that the plaintiff did not rebut the presumption of validity of the patent, the obviousness of the patent, and the anticipation of the patent, as provided for by statute.

19. In conclusion, the Court finds that the Nolan patent is valid.

Based on the foregoing findings of fact, the Court reaches the following conclusions of law:

## CONCLUSIONS OF LAW AS TO INVALIDITY CLAIM

### A. *Presumption of Validity*

■ 1. Title 35, United States Code, § 282 states that a patent shall be presumed to be valid. Further, the burden of establishing invalidity of a patent or any claim thereof rests on the party asserting such invalidity. *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed.Cir.1984).

■ 2. The burden of proof required to prove a patent invalid is by clear and convincing evidence. *Bewal, Inc. v. Minnesota Mining & Mfg. Co.*, 292 F.2d 159 (10th Cir.1961); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542 (Fed.Cir.1983); *Carella v. Starlight Archery*, 804 F.2d 135 (Fed. Cir.1984).

3. It is well settled that the presumption of validity encompasses three separate tests of patentability: novelty, utility, and nonobviousness. *United States v. Adams*, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

■ 4. The rules of law set out above are succinctly stated in *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707 (Fed.Cir.1984), as follows:

... Thus, included within the presumption of validity is a presumption of novelty, a presumption of nonobviousness and a presumption of utility, each of which must be presumed to have been met.

\* \* \* \* \* \*

To summarize on this point, § 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker. That burden is constant and never changes and is to convince the court of invalidity by clear evidence. Deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider. All evidence bearing on the validity issue, whether considered by the PTO or not, is to be taken into account by the tribunal in which validity is attacked.

*Structural Rubber Products*, 749 F.2d at 714.

### B. *Prior Art Reference*

■ 1. The burden of persuasion always remains on the party asserting invalidity of the patent, whether or not the most pertinent prior art was considered by the examiner. *Solder Removal Co. v. U.S. International Trade Comm.*, 582 F.2d 628, 65 CCPA 120 (1978).

■ 2. Trojan failed to prove by clear and convincing evidence that a single prior art reference disclosed each and every element of the Nolan patent. *Carella v. Starlight Archery, supra; RCA Co. v. Applied Digital Data System, Inc.*, 730 F.2d 1440 (Fed.Cir.1984).

■ 3. Trojan failed to meet its burden of proof on its claim that the Patent Examiner failed to consider the Thomas and Evans patents. *See Solder Removal Corp. v. U.S. International Trade Comm., supra.* Trojan failed to meet its burden because the Evans and Thomas patents are not more pertinent than the prior art considered by the Patent Examiner; rather, they are culminative of the considered art. *Rosemount, Inc. v. Beckman Instruments*, 727 F.2d 1540, 1546 (Fed.Cir.1984).

### C. *Nonobviousness*

■ The seminal case on nonobviousness is *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Per *Graham*, the ultimate question of patent validity is one of law, *see A & P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 155, 71 S.Ct. 127, 131–32, 95 L.Ed. 162 (1950), and the § 103 condition (nonobviousness) is one of three conditions that must be considered in determining validity. The *Graham* Court elaborated:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and

the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. . . .

While we have focused attention on the appropriate standard to be applied by the courts, it must be remembered that the primary responsibility for sifting out unpatentable material lies in the Patent Office.

*Graham,* 383 U.S. at 17–18, 86 S.Ct. at 694.

### D. *Duty to Disclose*

■■■ 1. The Court concludes that Trojan failed to prove by clear and convincing evidence (1) that Nolan was under a duty to disclose the Thomas patent to the Patent Office and (2) that such nondisclosure renders the Nolan patent invalid. It is not sufficient that the patent application contains less than the whole truth; it must also be shown that such omission or nondisclosure was with fraudulent intent. *Celluloid Manufacturing Company v. Russell,* 37 F. 676 (C.C.N.Y.1889). Trojan did not offer any proof at trial that Nolan perpetrated a fraud on the Patent Office by not disclosing the Thomas patent.

■■■ 2. Nolan had no duty to disclose the Thomas patent to the Patent Office because such reference would have been merely cumulative and not material. *Kimberly–Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1455–56 (Fed.Cir.1984).

3. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553 (Fed.Cir.1984), on which Trojan relies to support its duty-to-disclose argument, is factually distinguishable from the action *sub judice;* therefore, it is not controlling.

Wherefore, in light of the foregoing findings of fact and conclusions of law on defendant's infringement claim and Trojan's invalidity claim, the Court has determined that as a matter of law, the Nolan patent has been infringed by Trojan's SAF–T–COTE fluorescent bulb.

The Court has further held that the Nolan patent is a valid patent.

Consequently, the Court must now consider the relief and/or damages to which Shat–R–Shield is entitled on its counterclaim.

### TOTAL DAMAGES

#### A. *Injunctive Relief*

■■■ 1. Shat–R–Shield is entitled to injunctive relief. Trojan shall immediately cease and desist from the manufacturer, production, sale and distribution of the SAF–T–COTE fluorescent lamp.

2. Additionally, the Court requires Trojan to recall all the SAF–T–COTE fluorescent lamps sold to and still in the possession of its customers.

#### B. *No Accounting*

■■■ The Court holds that defendant is not entitled to an account of past sales because the record reflects defendant's intention to abandon the aspect of money damages. This intention is borne out as follows:

1. On June 10, 1985, defendant propounded its interrogatory (No. 18) to Trojan requesting its sales volume.

2. Trojan did not answer this interrogatory on the grounds of confidentiality.

3. It was not until April 18, 1988, more than two and one-half years later, that defendant moved to compel discovery of this information.

4. At the pretrial conference on April 21, 1988, Magistrate Cooke denied the motion as untimely and informed the parties that the issue of damages would not be bifurcated.

5. Therefore, the Court finds that defendant effectively abandoned its claim for monetary damages and tried to resurrect the same on the eve of trial. The Court can conceive of numerous other ways defendant could have presented its claim for monetary damages.

### C. *Attorney's Fees*

1. The general rule is that the prevailing party in a patent infringement case is not automatically entitled to attorney's fees. *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645 (10th Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).

2. Title 35, United States Code, § 285 provides for the award of attorney's fees only in exceptional cases.

3. The award of attorney's fees is addressed to the sound discretion of the Court based on evaluation of the conduct of the parties. *Campbell v. Spectrum Automation Co.*, 601 F.2d 246 (6th Cir.1979).

4. In view of the chronological order of the events leading up to this action, the Court can only find this case not to be exceptional. Trojan began manufacturing its SAF–T–COTE fluorescent lamp about one year before the Nolan patent issued on March 19, 1985. After being informed by defendant that the SAF–T–COTE fluorescent bulb infringed its patent and upon the advice of counsel, Trojan filed this declaratory judgment action on April 17, 1985.

5. Thus, the Court concludes that this action is the garden variety patent infringement/patent validity action.

6. Since it is not an exceptional case, defendant is not entitled to its attorney's fees.

### D. *Treble Damages*

1. As to the infringement claim alone, Title 35, United States Code, § 284 provides for treble damages against a patent infringer if such infringement is willful and wanton.

2. As noted in paragraph C above, the record does not support a finding that Trojan's infringement was willful and wanton. The Nolan patent issued on March 19, 1985. After Shat–R–Shield informed Trojan that its SAF–T–COTE fluorescent bulb infringed the Nolan patent, upon the advice of its counsel, Trojan promptly filed their declaratory judgment action on April 17, 1985 to resolve this dispute.

3. Under these circumstances, the Court concludes that Shat–R–Shield's claim that Trojan's infringement was willful and wanton is without support. Accordingly, Shat–R–Shield is not entitled to statutory treble damages under Title 35, United States Code, § 284.

An Order and Judgment in accordance with these Findings of Fact and Conclusions of Law will be entered on the same date herewith.